

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARK STEVEN ELK SHOULDER,<br><br>Defendant. | CR 19-29-BLG-SPW<br><br>ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS |

A sex offender must appear in person and inform a jurisdiction each time he changes residences. 34 U.S.C. § 20913(c). If the sex offender becomes incarcerated, this requirement does not apply. Section 20915(a). But if a sex offender resides somewhere, becomes incarcerated, and returns there upon his release, it is not immediately apparent whether his term of incarceration should nevertheless be considered a change of residence. Defendant Mark Steven Elk Shoulder argues his term of incarceration was not a change in residence, and therefore, he was not required to appear in person and inform the jurisdiction upon his release.

## I. Background

Elk Shoulder is a tier III sex offender under the Sex Offender Registration and Notification Act (SORNA). He last registered in compliance with SORNA in April

1

2016. (Doc. 24 at 2.) In March 2017, while he was living as a transient in Billings, Montana, law enforcement arrested Elk Shoulder on charges related to assault with a weapon. (Docs. 23 at 2, 25 at 4–5.) The following month, he was federally charged for failure to register under SORNA, and he pleaded guilty in January 2018. (Doc. 25 at 2–3.) The Court sentenced Elk Shoulder to a 12-month term of incarceration, but due to pending state charges, he was not released from custody until November 14, 2018. (*Id.* at 3.) Upon his release, Elk Shoulder again began living as a transient in Billings, and he again did not register as a sex offender. He was arrested for violations of his supervision on November 27, 2018, and later charged a second time for failure to register. (*Id.* at 3–4.) Elk Shoulder has filed a motion to dismiss the charge. (Doc. 23.) That motion is now ripe.

## II. Discussion

Congress enacted SORNA in 2006 to "make more uniform" a "patchwork of federal and 50 individual registration systems" with "loopholes and deficiencies that had resulted in an estimated 100,000 sex offenders becoming missing or lost." *United States v. Kebodeaux*, 570 U.S. 387, 399 (2013) (internal quotations and citations omitted). Under SORNA, a sex offender must "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913. The sex offender must provide "[t]he address of each residence at which the sex

offender resides or will reside." Section 20914(a)(3). To keep his registration current, "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry."[1] Section 20913. The definition of *jurisdiction* includes any state. Section 20911(10). *Resides* means "with respect to an individual, the location of the individual's home or other place where the individual habitually lives." Section 20911(13). 18 U.S.C. § 2250(a)(3) provides a criminal penalty for a sex offender who "knowingly fails to register or update a registration as required by [SORNA]."

SORNA authorizes the Attorney General to "issue guidelines and regulations to interpret and implement" its statutory scheme. 34 U.S.C. § 20912(b). Therefore, the Attorney General promulgated The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030 (July 2, 2008) [hereinafter the SORNA Guidelines]. According to the SORNA Guidelines, *habitually lives*—one of two statutory definitions for *resides*—"should be understood to include places in which the sex offender lives with some regularity, and with reference to where the

---

[1] A sex offender must also initially register "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement." Section 20913(b)(1). As Elk Shoulder correctly points out, this initial registration requirement does not apply to sex offenders who are incarcerated for different offenses, much like Elk Shoulder was from March 2017 through November 2018.

3

sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons." SORNA Guidelines, at 38062. "[A] sex offender habitually lives in the relevant sense in any place in which the sex offender lives for at least 30 days." *Id.* This does not, however, provide sex offenders a 30-day safe harbor from registration:

> As to the timing of registration based on changes of residence, the understanding of "habitually lives" to mean living in a place for at least 30 days does not mean that the registration of a sex offender who enters a jurisdiction to reside may be delayed until after he has lived in the jurisdiction for 30 days. Rather, a sex offender who enters a jurisdiction in order to make his home or habitually live in the jurisdiction must be required to register within three business days, as discussed in Part X.A of these Guidelines. Likewise, a sex offender who changes his place of residence within a jurisdiction must be required to report the change within three business days, as discussed in Part X.A.

*Id.*; *see United States v. Thompson*, 811 F.3d 717, 730 (5th Cir. 2016) (affirming a conviction for failure to register when the sex offender resided in a jurisdiction for only twenty days because the sex offender abandoned his residence in one city and relocated to another with no intention to return).

By including *habitually lives* in its definition of *resides*, SORNA ensures that sex offenders who lack fixed abodes must register. When registering, though they cannot provide a definite address, "some more or less specific description should normally be obtainable concerning the place or places where such a sex offender habitually lives—e.g., information about a certain part of a city that is the sex offender's habitual locale . . . ." SORNA Guidelines, at 38057. Accordingly, a sex

4

offender habitually lives in a jurisdiction when he lives there with the intent to remain with some regularity, or lives there for at least 30 days, even if the sex offender is transient. *United States v. Alexander*, 817 F.3d 1205, 1214 (10th Cir. 2016); *United States v. Van Buren*, 599 F.3d 170 (2nd Cir. 2010).

Nevertheless, SORNA's registration requirements do not apply to sex offenders who are incarcerated:

> Given that there is virtually no risk that a sex offender will fall through the cracks or go missing while incarcerated, it would make little sense to apply SORNA's registration requirements and criminal provisions to incarcerated individuals. In fact, Congress recognized that the public is adequately protected against sex offenders locked behind bars: this is why sex offenders are not required under § [20913(b)] to initially register until the *end* of their post-conviction carceral sentences.

*United States v. Gundy*, 2013 WL 2247147, at *9 (S.D.N.Y. May 22, 2013), *rev'd on other grounds*, 804 F.3d 140 (2d Cir. 2015) (emphasis in original); *see* 34 U.S.C. § 20915 ("A sex offender shall keep the registration current for the full registration period (excluding any time the sex offender is in custody or civilly committed) . . . .").

Elk Shoulder argues that because SORNA's registration requirements do not apply while a sex offender is incarcerated, incarceration does not qualify as a change in residence. Therefore, if an incarcerated sex offender returns to his former residence upon his release, Elk Shoulder argues SORNA treats the sex offender as never having changed residences in the first place—obviating the sex offender's

need to update his registration. At issue, then, is the definition of a change in residence and whether a term of incarceration qualifies as one. The Court concludes it does.

The Court only needs to look to the statutory definition of *resides* and the ordinary meaning of the word *change*. In *Alexander*, the 10th Circuit upheld a jury instruction defining *change* in a SORNA case where a change of residence was at issue: "To change something means to make different from what it is; or to substitute one thing for another." *Alexander*, 817 F.3d at 1211. Based on the definitions of *change* and *resides* in the context of SORNA, the plainest reading of the statute is this: whenever a sex offender's home or other place he habitually lives becomes different, he has changed his residence. A sex offender with a home in one city who leaves and begins habitually living in another has changed his residence. *See Thompson*, 811 F.3d at 730. If the sex offender returned to the original city, his residence would change once again.

Likewise, a sex offender habitually living in a city who is arrested and incarcerated has also changed his residence—the place he resides has become different; it has changed to the prison. This does not mean the sex offender must register after his residence has changed to a prison. SORNA clearly carves out an exception to the registration requirement in such a case. Yet even if the sex offender does not need to update his registration after becoming incarcerated, the sex

offender's residence has nonetheless *changed*. Moreover, if the sex offender returns to habitually live in his original location upon his release, his residence has changed again.[2]

In Elk Shoulder's case, the detention facility became his place of residence while he was incarcerated, even if he was not required to register as a sex offender while residing there. When Elk Shoulder was released, however, the carve-out no longer applied. Elk Shoulder needed to update his registration upon his release to inform the jurisdiction of his whereabouts.

This statutory interpretation comports with SORNA's fundamental policy goals—primarily, to give law enforcement and the community knowledge of a sex offender's whereabouts. SORNA Guidelines, at 38044. SORNA does this by making state sex-offender registration and community notification schemes "more comprehensive, uniform, and effective." *Carr v. United States*, 560 U.S. 438, 441 (2010). Requiring a sex offender to update his registration with each change of residence, including a post-release change of residence, accomplishes that goal. Elk Shoulder's position would run afoul of this purpose.

---

[2] Elk Shoulder spent over 18 months in custody after his March 2017 arrest, so there is no doubt his residence changed both when he was incarcerated and when he was released. However, one could easily imagine a scenario where a sex offender spent a substantially shorter period in custody—for example, only one or two weeks. In such a case, it would be unreasonable to say the sex offender's residence had changed. The Court is not faced with this dilemma; however, if it were, the SORNA Guidelines would provide the best guidance. A sex offender serving a sentence of 30 or more days most likely "habitually lives" or resides in the prison he is serving his sentence. *See* SORNA Guidelines, at 38062.

Elk Shoulder contends that in other contexts, a prisoner's domicile is presumed to remain the same while he is in prison, and "a forcible change in a prisoner's state of residence does not alter his domicile." (Doc. 25 at 2.) But in making this argument, Elk Shoulder states what is obvious—imprisonment is a "change in a prisoner's state of residence," even if it is forcible and does not alter the prisoner's domicile. Domicile "is a voluntary status," *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991), but SORNA asks only whether a sex offender's residence has changed.[3] Whether or not Elk Shoulder's *domicile* changed while he was incarcerated is irrelevant to SORNA's criminal framework. A prisoner's domicile is an element of establishing federal diversity jurisdiction over civil actions (that is, whether the prisoner and opposing parties are citizens of different states). *See* 28 U.S.C. § 1332. Elk Shoulder remained a citizen of Montana after his incarceration, and he would have remained a citizen of Montana even if he was incarcerated in a different state. *See Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010). But a change in domicile and a change in residence are distinct issues. Elk Shoulder's domicile may have stayed the same, but Elk Shoulder's residence

---

[3] It is an affirmative defense to prosecution for failure to register that: (1) uncontrollable circumstances prevented the sex offender from complying, (2) the sex offender did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply, and (3) the sex offender complied as soon as such circumstances ceased to exist. 18 U.S.C. § 2250(c). Release from prison does not implicate this defense.

8

changed when he was incarcerated, and it changed again when he was released. Accordingly,

**IT IS ORDERED** that the Defendant Mark Elk Shoulder's Second Motion to Dismiss (Doc. 21) is **DENIED**.

DATED this 16th day of December, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge